## TEXAS TRANSPORT & TERMINAL COMPANY, INCORPORATED, *v.* CITY OF NEW ORLEANS.

ERROR TO THE SUPREME COURT OF THE STATE OF LOUISIANA.

No. 141. Argued January 4, 7, 1924.—Decided February 18, 1924.

A state license tax cannot be laid upon the business of a corporation employed as agent by owners of vessels engaged exclusively in interstate and foreign commerce, where its business is confined to, and is a necessary adjunct of, their commerce, consisting in the soliciting and engaging of cargo, nominating vessels to carry it, arranging for delivery on wharf and for stevedores, issuing bills of lading, collecting freight charges, paying ships' disbursements, and other incidental matters. *McCall* v. *California,* 136 U. S. 104, followed. *Ficklen* v. *Shelby County Taxing District,* 145 U. S. 1, distinguished.

152 La. 497, reversed.

ERROR to a judgment of the Supreme Court of Louisiana, which affirmed a judgment for the City of New Orleans in an action for a license tax.

*Mr. George H. Terriberry,* with whom *Mr. W. W. Young* and *Mr. Joseph M. Rault* were on the briefs, for plaintiff in error.

*Mr. W. Catesby Jones,* with whom *Mr. Ivy G. Kittredge* was on the brief, for defendant in error.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

The City of New Orleans brought this action in a Louisiana state court to recover from defendant (plaintiff in error here) a license tax of $400, imposed, for the year 1922, upon its business of steamship agent. The demand was resisted on the ground that the tax was in contravention of the Commerce Clause of the Constitution of the United States in that it was an interference with and tax upon interstate and foreign commerce. Defendant was regularly employed as agent for four steamship lines, under a contract fixing its compensation on the basis of commissions, calculated upon the gross amount of freight charges collected by it for each company. In addition, defendant occasionally represented other ship owners. All were exclusively engaged in interstate or foreign commerce, and defendant's business was confined solely to representing principals so engaged in such commerce. The service rendered consisted of soliciting and engaging cargo, nominating ships for carrying it, arranging for its delivery on the wharf, issuing bills of lading under the name of ship owner or charterer, arranging for stevedores for loading and discharging cargo, collecting freight charges, paying ships' disbursements, attending to immigration service and assisting generally in matters of local customs and regulations.

Freight moneys collected, after deducting commissions, were remitted to the owners or charterers. As such agent, defendant was authorized to solicit cargo and quote freight rates and to issue receipts in the name of its principal for cargo delivered on the wharf.

Upon these facts the trial court held that defendant's business was local in character and subject to the tax. Upon appeal, this judgment was affirmed by the State Supreme Court. 152 La. 497.

The State Supreme Court thus stated the necessity and character of the agent's duties:

" The business of steamship agents is an extensive business in New Orleans, as it is in every large seaport. As a separate or an independent business, it is a result of the development of the country's commerce with foreign nations and among the several states. In the early days, when time was not so much the object or subject of economy as it is today, every ship's captain, for his own ship, discharged the duties and rendered the services for which local steamship agents are employed nowadays. But it would be impracticable now for a ship's captain to remain with his ship in port long enough to attend to the many matters which the local steamship agents can and do attend to for a ship at sea or in a foreign port. The business of steamship agents is therefore a necessary adjunct to commerce on the high seas."

This Court has had frequent occasion to consider and determine the effect of taxes of the same general character as that here involved, and, for present purposes, we find it unnecessary to do more than refer to the general and well established rule, which is that a State or state municipality is powerless to impose a tax upon persons for selling or seeking to sell the goods of a nonresident within the State prior to their introduction therein, *Stockard* v. *Morgan,* 185 U. S. 27; or to impose a tax upon persons for securing or seeking to secure the trans-

portation of freight or passengers in interstate or foreign commerce. *McCall* v. *California*, 136 U. S. 104. The latter decision controls the present case. There the agent of a railroad company was engaged in San Francisco in the business of soliciting and inducing persons to travel from the State of California into and through other States to New York City, over the line of railroad which he represented. It was held that the business of the agent constituted a method of securing passenger traffic for the company, and therefore (p. 109) the tax was one " upon a means or an occupation of carrying on interstate commerce, pure and simple." The only difference between that case and this is that there the agent was engaged in seeking interstate passenger business, while here the agent was engaged in seeking interstate and foreign freight business. Plainly, as pointed out in the *McCall Case* (p. 109), the principle is the same.

*Ficklen* v. *Shelby County Taxing District*, 145 U. S. 1, is relied upon to justify the tax, but quite clearly it does not do so. The facts of that case differ materially from those of the *McCall Case* and those with which we are here dealing. In the *Ficklen Case* complainants were general merchandise brokers. They paid the initial tax imposed by the Tennessee law for the year 1887 and received and held throughout the year a general and unrestricted license to do business as such. They thereby became liable, under the statute, to pay an additional privilege tax in part graduated according to the amount of commissions received. It happened that, during 1887, the principals of one complainant were wholly nonresident and those of the other, largely so. The opinion pointed out that the fact might have been otherwise then and afterward, since their business was not confined to transactions for nonresidents. At the expiration of the year complainants applied for a renewal of their licenses, which was refused because they had made no return of their commis-

sions and no payment of the tax, as required.   In deciding the case, stress was laid upon the fact that they had taken out a license under the law to do a general commission business, had given bond to report their commissions during the year and to pay the required percentage thereon; and, agreeing with the state court, it was said that resort to a judicial remedy could not be had because the authorities had refused to issue a license for the ensuing year without payment of the stipulated tax.   Concluding the opinion, it was said:   " What position they would have occupied if they had not undertaken to do a general commission business, and had taken out no licenses therefor, but had simply transacted business for non-resident principals, is an entirely different question, which does not arise upon this record."   The decision rests largely upon the elements above stated, as was pointed out by Mr. Justice Brewer in *Brennan* v. *Titusville,* 153 U. S. 289, 307:

" It was held that the tax was an entirety, and was not affected by the variable and adventitious results of business from year to year. . . . In other words, the tax imposed was for the privilege of doing a general commission business within the State, and whatever were the results pecuniarily to the licensees, or the manner in which they carried on business, the fact remained unchanged that the State had, for a stipulated price, granted them this privilege.   It was thought by a majority of the court that to release them from the obligations of their bonds on account of the accidental results of the year's business was refining too much, and that the plaintiffs who had sought the privilege of engaging in a general business should be bound by the contracts which they had made with the State therefor."

The case is near the border line and has been deemed exceptional.   *Crew Levick Co.* v. *Pennsylvania,* 245 U. S. 292, 296; *Stockard* v. *Morgan, supra,* pp. 34–37.

The present case is sufficiently differentiated by the fact that the agent here neither did nor held itself out as ready to do a general business, partly local and partly interstate and foreign, but confined itself exclusively to the latter.

*Reversed.*

MR. JUSTICE BRANDEIS dissenting, with whom MR. JUSTICE HOLMES concurs.

From the multitude of cases, this general rule may be educed.[1] The validity of a state tax under the commerce clause does not depend upon its character or classification. It is not void merely because it affects or burdens interstate commerce. The tax is void only if it directly burdens such commerce, or (where the burden is indirect) if the tax discriminates against or obstructs interstate commerce. In this case there is no claim that interstate commerce is discriminated against or obstructed. The contention is that the tax imposes a direct burden. Whether the burden should be deemed direct depends upon the character of plaintiff's occupation and its relation to interstate transactions.

The occupation tax laid by New Orleans is fixed in amount;—businesses being classified into several grades according to the amount of business done. The Texas Transport & Terminal Company falls within the highest grade—those whose receipts exceed $100,000 a year—and, thus, it is taxed $400 a year. The business is what is called a steamship agency. The main office is in New York City. It has branches in New Orleans and in five other ports of the United States. It is a wholly independent concern. No ship owner has an interest in it; and it has no interest in any ship which it serves. Some

---

[1] Compare Thomas Reed Powell, "Indirect Encroachment on Federal Authority by the Taxing Powers of the States," 31 Harv. Law Rev. 321, 572, 721, 932; 32 Harv. Law Rev. 234, 374, 634, 902.

of these are regular ocean liners; others are casual tramp ships. The services rendered include, among other things, arranging with independent stevedore concerns for discharging and loading cargoes; arranging with independent dealers for bunkering, that is, buying fuel and oil; making provision for fitting ships for any special or peculiar cargo; making provision for compliance with the immigration and customs laws; and paying the ship's disbursements. For these, and the other services of soliciting cargoes, arranging for their delivery, and collecting payment for freight, the company is compensated. Usually the compensation is measured by a percentage on the gross freight charges collected. Sometimes it is a lump sum for each ship served. These comprehensive services require, for their efficient performance, the employment of a steamship agency, or its equivalent, whatever the home port of the ship or the principal place of its owner's business.

It is settled law that interstate commerce is not directly burdened by a tax imposed upon property used exclusively in interstate commerce, *Transportation Co.* v. *Wheeling,* 99 U. S. 273, 284; *Old Dominion S. S. Co.* v. *Virginia,* 198 U. S. 299, 306; or by a tax upon net income derived exclusively from interstate commerce, *United States Glue Co.* v. *Oak Creek,* 247 U. S. 321; *Shaffer* v. *Carter,* 252 U. S. 37, 57; compare *Peck & Co.* v. *Lowe,* 247 U. S. 165; or by an occupation tax, fixed in amount, although the business consists exclusively of selling goods brought from another State. *Wagner* v. *City of Covington,* 251 U. S. 95. On the other hand, the burden is deemed direct, where the tax is upon property moving in interstate commerce, *Champlain Realty Co.* v. *Brattleboro,* 260 U. S. 366; or where it lays, like a gross-receipts tax, a burden upon every transaction in such commerce " by withholding, for the use of the State, a part of every dollar received in such transactions,"

*Crew Levick Co.* v. *Pennsylvania,* 245 U. S. 292, 297; or where an occupation tax is laid upon one who, like a drummer or delivery agent, is engaged exclusively in inaugurating or completing his own or his employer's transaction in interstate commerce. *Robbins* v. *Shelby County Taxing District,* 120 U. S. 489; *Davis* v. *Virginia,* 236 U. S. 697.

The New Orleans tax is obviously not laid upon property moving in interstate commerce. Nor does it, like a gross-receipts tax, lay a burden upon every transaction. It is simply a tax upon one of the instrumentalities of interstate commerce. It is no more a direct burden, than is the tax on the other indispensable instrumentalities; upon the ship; upon the pilot boat, which she must employ; upon the wharf at which she must load and unload; upon the office which the owner would have to hire for his employees, if, instead of engaging the services of an independent contractor, he had preferred to perform those duties himself. The fact that, in this case, the services are performed by an independent contractor having his own established business, and the fact that the services rendered are not limited to soliciting, differentiate this case from *McCall* v. *California,* 136 U. S. 104. If these differences are deemed insufficient to distinguish that case from the one at bar, it should be frankly overruled as inconsistent with the general trend of later decisions.