## MOTOR TRANSIT CO. et al. v. RAILROAD COMMISSION OF CALIFORNIA.

### No. 881–S.

District Court, S. D. California, Central Division.

June 22, 1936.

Frank Karr and R. E. Wedekind, both of Los Angeles, Cal., and H. C. Lucas and Orla St. Clair, both of San Francisco, Cal., for complainants.

Ira H. Rowell, Roderick B. Cassidy, and Gilmore Tillman, all of San Francisco, Cal., for defendants.

Before WILBUR, Circuit Judge, STEPHENS and YANKWICH, District Judges.

STEPHENS, District Judge.

The complainants operate passenger stage lines in California and carry both interstate and intrastate passengers with their baggage. Complainant Pacific Greyhound Lines, Inc., alone operates across state lines.

The defendant is the state governmental body having the duty of enforcing the Motor Carrier Transportation Agent Act (St. Cal.1933, c. 390, p. 1011, as amended in 1935 [St.Cal.1935, p. 1833]), herein claimed to be void as violative of the commerce clause (article 1, § 8, cl. 3) of the Federal Constitution. The cause was heard by a statutory three judge court (Jud.Code § 266, 28 U.S.C.A. § 380), and was submitted upon a stipulation that the facts stated in the bill of complaint, but not the conclusions contained therein, are true. Defendants also made, argued, and submitted a motion to dismiss.

We shall epitomize the act:

Section 1 (St.Cal.1933, p. 1012) declares that the public welfare requires the regulatory provisions of the act as they shall be applied to stages not operating under the Commission's certificate of convenience and necessity; that such regulations shall apply to both interstate as well as intrastate business until Congress shall cover the subject matter.

Section 2 defines any one selling or offering to sell tickets over the state's highways, including officers, employees, and commission agents of stage operating companies, as motor carrier transportation agents. We shall generally use the shorter term of "ticket seller." It applies equally to interstate and intrastate commerce. However, the provisions of section 1 and section 2 of the 1933 act limiting the act's application to those operating without the Commission's certificate is stricken out of section 2 by the 1935 amendment (St.Cal. 1935, p. 1834, § 1). The act upon its face now apparently applies to all stage ticket selling. The Railroad Commission, the governmental enforcing body, however, striving to make the act workable, has heretofore notified complainants of the following interpretation of the act and has demanded compliance therewith: "The Commission does not interpret the Act, as amended, to require passenger carriers by motor vehicle, either certificated or uncertificated, or such carriers' officers or employees, to be licensed as Motor Carrier Transportation Agents in order lawfully to sell, furnish or provide transportation over their own or their employers' lines. Such persons require licenses only in so far as they may wish to sell, furnish or provide transportation over the line of a connecting carrier or some carrier other than their own or their employer's line."

License Required.

Before any one can act as a ticket seller, he must first be licensed under the commission's exercise of discretion, and must pay a $1 annual fee, which goes to the credit of the commission for its operating expenses. The fee was reduced from $5 per annum in 1935 (St.Cal.1933, p. 1014, § 7, amended by St.Cal.1935, p. 1834, § 2).

The license is limited in its application to the sale of stage tickets over lines specified in the license application, but must not cover any stage line that has not complied with the state and federal laws and the Commission's general orders.

The license shall not issue except upon the giving of a bond in the sum of $1,000, conditioned upon the faithful performance of the contract of transportation evidenced by the tickets sold and also upon the licensee's faithful compliance with the act (St.Cal.1933, p. 1014, § 8).

Any stage company may put up a bond for $25,000 which will cover every ticket

selling officer, employee, and commission agent authorized by such company. The license is revocable by the Commission for unfitness, or for violation of the law or the commission's orders. Licensees must keep accounts of transactions, which are open to inspection. The Commission's general powers of hearings are made applicable to the act. Severe penalties are provided for violation of the act (section 17, p. 1017). If any part of the act is declared unconstitutional, the rest of the act shall not necessarily be affected (section 19).

### The Issue.

The issue here is narrowed to the point: Does the license requirement unconstitutionally affect interstate commerce to the irreparable injury of complainants?

Complainants act under tariff agreements and concurrences and issue tickets for transportation in both interstate and intrastate commerce, complainant Pacific Greyhound Company operating directly in both, while the other complainants issue tickets over the lines with connecting transportation over other lines, in both intrastate and interstate business. Such method of operation is a practical necessity, and is for the business gain of the operator and the convenience of the public. As a business matter, the sale of tickets or the operation of stages cannot be separated in the matter of intrastate and interstate commerce.

It is, of course, true that in many, if not most, instances but one ticket seller is authorized or, from an operative standpoint, justified in a station or agency, and in almost every station but one ticket man is on duty at a time. It is clear, too, that a ticket from one point to another over connecting lines to a destination across state lines cannot practically be made up by different persons. It follows as a practical result, from these conditions and from the terms of the act, with or without the interpretation placed upon it by defendants, that, before a person can be authorized to sell interstate transportation tickets, he must submit his application to the discretion of the State Railroad Commission, and, if passed by it, he would be required to place his bond and submit generally to the state regulation. To state such a proposition conclusively proves its invalidity. Where one or the other of the sovereignties must yield, the state must yield.

Without further discussion, it seems to us that the underlying reasoning of the following cases applies: Di Santo v. Pennsylvania, 273 U.S. 34, 47 S.Ct. 267, 71 L. Ed. 524; McCall v. California, 136 U.S. 104, 10 S.Ct. 881, 34 L.Ed. 391; Bowman et al. v. Continental Oil Co., 256 U.S. 642, 41 S.Ct. 606, 65 L.Ed. 1139; Adams Express Co. v. New York, 232 U.S. 14, 34 S.Ct. 203, 58 L.Ed. 483; Cooney v. Mountain States Tel. & Tel. Co., 294 U.S. 384, 55 S.Ct. 477, 79 L.Ed. 934; Crutcher v. Kentucky, 141 U.S. 47, 11 S.Ct. 851, 35 L.Ed. 649; Texas Transport & Terminal Co., Inc., v. City of New Orleans, 264 U.S. 150, 44 S.Ct. 242, 68 L.Ed. 611, 34 A.L.R. 907.

### The Motion to Dismiss.

In addition to the points in the motion to dismiss, not already treated, we make the following comment: The point made by defendant that complainants have no justiciable interest in the subject matter is not tenable. The act, technically speaking, prohibits the sale of tickets by the operating companies and confines such sale to licensed individuals, either within or without the company organization. It is a matter of immediate and vital concern to the complainants. Defendant's construction of the act arbitrarily excuses the officers and employees of complainants in the sale of tickets over their own lines, but it is clear that this does not eradicate the evil.

Their officers and employees, in so far as they may desire to sell tickets over connecting lines without compliance with the licensing requirement, are subject to the penalties of the act. So the complainants have a direct interest in the matter. And cases like Lehon v. Atlanta, 242 U.S. 53, 37 S.Ct. 70, 61 L.Ed. 145, holding that one who has not applied for a license under an enactment is not in a position to question its constitutionality, have no application. It is true that the complainants, as carriers, are not licensable under the act. But, as their officers and employees would be licensable, their interest is as vital as it can be. No tickets could be sold at all, resulting in untold confusion and general inconvenience to the companies and the traveling public, except by the commission's discretionary licensees. With the present trend towards entertaining suits involving constitutional questions at the behest of persons indirectly interested, but vitally af

fected, such as stockholders and the like (Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688; Carter v. Carter Coal Co., 56 S.Ct. 855, 80 L.Ed. ——), complainants' justiciable interest is further removed from any possible doubt. Enforcement of the statute would with absolute certainty operate to injure them. See Pennsylvania v. West Virginia, 262 U.S. 553, 43 S.Ct. 658, 67 L.Ed. 1117, 32 A.L.R. 300; Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070, 39 A.L.R. 468; Carter v. Carter-Coal Co., supra.

■ Defendants seek to estop complainants from seeking relief upon the ground that they complied with the act and affirmatively favored its enforcement prior to the changes made in 1935. The amendment, as to its scope, was very material. It should be remembered also that the United States (U.S.Statutes 1935, c. 498, 49 Stat. 543, 49 U.S.C.A. § 301 et seq.) extended its regulatory hand over the subject matter in the same year. However, we do not understand the rule to go beyond the point that conformity with a law is persuasive in a more or less degree that the interpretation evidenced thereby is the correct one. Of course, the litigant cannot consistently press for the advantages and shirk the burdens of a statute. We think complainants are not estopped from seeking the relief prayed.

■ In our opinion the act, admittedly very indefinite in its terms, in effect offends against the commerce clause of the Constitution and that its enforcement is practically impossible, and any attempt to enforce it against complainants would act to their irreparable injury. We make no intimation as to the operation of the act in relation to those having to do exclusively with intrastate commerce. The holding in this case may seem to leave stage ticket selling without the possibility of regulation, and upon this point we refer to the following passage from an opinion by Chief Justice Taft: "Commerce is a unit and does not regard state lines, and while under the Constitution, interstate and intrastate commerce are ordinarily subject to regulation by different sovereignties, yet when they are so mingled together that the supreme authority, the Nation, cannot exercise complete effective control over interstate commerce without incidental regulation of intrastate commerce, such incidental regulation is not an invasion of state authority or a violation of the proviso." Railroad Comm. of Wisconsin v. Chicago, B. & Q. R. Co., 257 U.S. 563, 588, 42 S.Ct. 232, 237, 66 L.Ed. 371, 22 A.L.R. 1086.

The motion to dismiss is denied, and a permanent injunction against the California Railroad Commission is ordered.

The attorneys for complainants may prepare findings of fact and conclusions of law and a judgment, according to the expressions herein contained.

WILBUR, Circuit Judge (concurring).

I concur with my associates. The requirement that each agent selling tickets should give a bond for $5,000 conditioned upon the faithful performance of contract of transportation as applied to interstate commerce is a direct burden upon that commerce, and therefore beyond the authority of the state. The decision of the Supreme Court in Di Santo v. Commonwealth of Pennsylvania, 273 U.S. 34, 47 S. Ct. 267, 71 L.Ed. 524, is decisive upon that question. There are a number of recent cases bearing upon this general subject referred to by the parties but none which overrule or modify the decision in Di Santo v. Commonwealth of Pennsylvania, supra. See Herbring v. Lee, 280 U.S. 111, 50 S.Ct. 49, 74 L.Ed. 217, 64 A.L.R. 1430; Hartford Accident & Indemnity Co. v. People of Illinois ex rel. McLaughlin, 298 U.S. 155, 56 S.Ct. 685, 80 L.Ed. ——, decided April 27, 1936; Pacific Tel. & Tel. Co. v. Tax Commission, 297 U.S. 403, 56 S.Ct. 522, 80 L.Ed. 760.