## Philadelphia Tax Review Board *v.* Norton, Lilly & Co., Appellant.

Argued December 17, 1958. Before RHODES, P. J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS. JJ. (HIRT, J., absent).

*George M. Brodhead,* with him *Ralph C. Evert, J. Welles Henderson,* and *Rawle & Henderson,* for appellant.

*Leonard B. Rosenthal,* Assistant City Solicitor, with him *James L. J. Pié,* Assistant City Solicitor, and *David Berger,* City Solicitor, for appellee.

OPINION BY WATKINS, J., March 20, 1959:

This appeal is taken from the action of the Court of Common Pleas of Philadelphia County, dismissing exceptions taken by the appellant, Norton, Lilly & Co. to the findings of the tax review board of the City of Philadelphia. The board's opinion denied petitions for review of taxes assessed against the appellant by the

department of collections of the City of Philadelphia under the mercantile license tax of the City of Philadelphia.

The appellant contends that no tax should have been assessed against it by the Department of Collections of the City of Philadelphia, for the reason that the gross receipts, so taxed, arose from foreign commerce and did not arise from business transacted in the City of Philadelphia. Therefore, the imposition of the tax upon appellant for the privilege of engaging in the business of general steamship agent for steamship lines would be unconstitutional and invalid under Art. I, Sec. 8, Clause 3 and Art. I, Sec. 10, Clause 2, of the Constitution of the United States.

The record, although not as exhaustive as it might be under the circumstances, indicates the appellant, Norton, Lilly & Co., to be a partnership consisting of eight partners having their main office in New York City with branch offices in various parts of the country, including the one located in the City of Philadelphia.

Appellant is engaged in the business of a general steamship agency for steamship lines operating solely in foreign commerce. Petitioner's functions are: Upon receipt of a radiogram concerning the vessel's arrival, it arranges for a pilot to board the vessel when it enters the Delaware Bay at Overfalls Lightship and to pilot the vessel to its berth in the Port of Philadelphia; it arranges for tugboats and with the operator of a pier for the berthing of the vessel; it contacts the stevedoring company (which performs its service as an independent contractor under a contract it already has for loading the vessel) and tells the stevedoring foreman in what hatches to place the cargo and the times for performing the work; it employs clerks to check on the cargo; and it makes the necessary dec-

larations for customs clearances; it collects the ocean freight charges due on the cargo discharged and, after accounting for the disbursements made for the account of the owner (such as pilots, stevedores and other port charges) and its fee, remits the net to the owners abroad; and with respect to outbound cargo, the appellant performs practically the same type of services, except, of course, arrangements are made for the receipt and loading of the outbound cargo.

The record also indicates that the appellant solicits cargo for shipment by steamship and also passenger travel. However, the contracts for cargo solicited are executed through the New York office since the Philadelphia office apparently does not have the cargo space and travel information available in the local office. This, however, is not a limitation placed on the Philadelphia office by the steamship companies but is an inter-office arrangement between the New York and Philadelphia branches of Norton, Lilly & Co. It appears, however, that some of the income derived from services rendered by the New York office are included in the gross income of the Philadelphia office merely as a bookkeeping arrangement within the company.

The actual loading and unloading of cargo and checking through customs, berthing and dispatching vessels, etc., is done by independent organizations who have contracts directly with the steamship company rather than with the appellant. However, the appellant does exercise a certain degree of control, especially over the stevedore company, in that, it orders the stevedoring company to unload certain holds within the ship first, or as to how many men shall be engaged in the unloading of the various holds of the ships, so that the time that any given ship will be tied up at the Philadelphia pier will be controlled through the appellant's office.

The question raised by appellant in this case is as to the constitutionality of the levy of the tax in this particular case and not as to the constitutionality of the ordinance itself. The tax review board admit that the services performed by the appellant as above described is the business of a "general steamship agent for eight steamship lines operating solely in foreign commerce". It also conceded that if any of the carriers, represented by the appellant, had performed the services in question, such steamship company would not be subject to the tax.

Confusion seems to reign supreme in the language of many of the Supreme Court cases, interpreting the commerce clause in relation to state and local taxes similar to the tax here in issue. So in *Texas Transport & Terminal Co. v. New Orleans*, 264 U. S. 150 (1924), the Court held a license tax invalid as applied to one engaged in the business of a steamship agency. The agency in this case performed substantially the same services as the appellant but was engaged in interstate and foreign commerce. This case clearly holds that the tax on this appellant's business is in violation of the commerce clause.

We agree with the tax review board that the decisions in these cases have been modified by many later decisions and that taxes similar to the one in question here have been valid under certain circumstances. This seems to be true where the risk of multiple taxation in interstate commerce does not exist and where the tax can be apportioned between local and interstate services. *Northwestern States Portland Cement Company, Appellant v. State of Minnesota*, #12 October Term, 1958, and *T. V. Williams, as State Revenue Commissioner, Petitioner v. Stockham Valves and Fittings, Inc.*, #33 October Term, 1958, decided by the Supreme Court of the United States in an opinion handed down

February 24, 1959, illustrate this policy of the court. These cases involve the constitutionality of state net income taxes levied on net income earned from and fairly apportioned to business activities within the taxing state where the activities are exclusively in furtherance of interstate commerce. The court here said that there is "a need for clearing up the tangled underbrush of past cases", and held that the taxpayer failed to show that the formula adopted placed a burden upon interstate commerce.

The leading case authority setting forth the law as enunciated by the Supreme Court of the United States, under the circumstances of the instant case, as near as it can be presently ascertained is *Puget Sound Stevedoring Company v. State Tax Commission*, 302 U. S. 90 (1937). This case involved a tax similar to that levied by the City of Philadelphia and the court below relied heavily upon it in affirming the tax review board. Puget Sound Stevedoring Company was a company engaged in two phases of business, (1) The actual business of stevedoring, whereby they had contracts with various steamship companies for the loading and discharging of cargo, and (2) that of acting as an employment agency whereby the company furnished stevedores for the steamship company, which stevedores then became employees of the steamship company and under their direct control. The United States Supreme Court held the tax was unconstitutional as to the actual stevedoring phase of the business but sustained the tax on the gross receipts from the phase of the business whereby the company acted as an employment agency. The Court determined that this phase of the business was not interstate and foreign commerce.

There is a lengthy discussion of the reasoning in the *Texas Transport* case and the *Puget Sound* case in *Jo-*

*seph v. Carter & Weekes Stevedoring Co.,* 330 U. S. 422 (1947), where the majority of the Court held that the commerce clause precluded the levy of a tax under state or local authority upon the gross receipts of stevedoring companies, from loading and unloading vessels employed in interstate or foreign commerce or upon the privilege of conducting such business measured by those gross receipts. By doing so, the Court reaffirmed Puget Sound and held that "Those incidents to transportation occupy the same relation to that commerce whether performed by the crew or by stevedore, contracting independently to handle the cargo. The movement of cargo off and on the ship is substantially a continuation of the transportation".

As Mr. Justice REED, who wrote the majority opinion, says, at page 430, "Since Puget Sound there has been full consideration of how far a state may go in taxing intrastate incidents closely related in time and movement to the interstate commerce . . . . When we examine the Berwind-White (309 U. S. 33) tax on the purchasers of tangible personal property for consumption, there is the same reliance upon the local character of the sale, . . . . We there said . . . . (at page 48) :

" 'Certain types of tax may, if permitted at all, so readily be made the instrument of impeding or destroying interstate commerce as plainly to call for their condemnation as forbidden regulations. Such are the taxes already noted which are aimed at or discriminate against the commerce or impose a levy for the privilege of doing it, or tax interstate transportation or communication or their gross earnings, or levy an exaction on merchandise in the course of its interstate journey'.

"Though all of these cases were closely related to transportation in commerce both in time and movement, it will be noted that in each there can be dis-

tinguished a definite separation between the taxable event and the commerce itself. We have no reason to doubt the soundness of their conclusions.

"Stevedoring is more a part of the commerce than any of the instances to which reference has just been made. Although state laws do not discriminate against interstate commerce or an actuality or by possibility subject it to the cumulative burden of multiple levies, those laws may be unconstitutional because they burden or interfere with commerce. See Southern P. Co. v. Arizona, 325 U. S. 761, 767, 89 L. ed. 1915. Stevedoring, we conclude, is essentially a part of the commerce itself and therefore a tax upon its gross receipts or upon the privilege of conducting the business of stevedoring for interstate and foreign commerce, measured by those gross receipts, is invalid. We reaffirm the rule of Puget Sound Stevedoring Company. 'What makes the tax invalid is the fact that there is interference by a State with the freedom of interstate commerce'. Freeman v. Hewit, supra (329 U. S. 256, ante, 274, 67 S. Ct. 274). Such a rule may in practice prohibit a tax that adds no more to the cost of commerce than a permissible use or sales tax. What lifts the rule from formalism is that it is a recognition of the effects of state legislation and its actual or probable consequences. Not only does it follow a line of precedents outlawing taxes on the commerce itself but it has reason to support it in the likelihood that such legislation will flourish more luxuriantly where the most revenue will come from foreign or interstate commerce. Thus in port cities and transportation or handling centers, without discrimination against out-of-state as compared with local business, larger proportions of necessary revenue could be obtained from the flow of commerce. The avoidance of such a local toll on the passage of commerce through

a locality was one of the reasons for the adoption of the Commerce Clause."

We feel that following the reasoning of the *Joseph v. Carter & Weekes Stevedoring Co.* case and its clear cut reaffirmance of the *Puget Sound* case, that we must reverse the court below, on the ground that the levy of this tax upon the services performed by this appellant is in violation of the Commerce Clause.

However, there is an even stronger reason for our position. Only foreign commerce is involved in this case as distinguished from the cases involving intrastate, interstate and foreign commerce. "Cases deciding the validity, under the commerce clause, of a state corporate franchise or similar tax on corporations are not necessarily precedents as regards the validity of such a tax under the import-export clause. The two constitutional provisions, while related, are not coterminous, because of important differences between the two clauses. The invalidating effect of the one derives from the prohibition of taxation on imports or exports; while that of the other in no way involves whether the article was, or had ever been, an import or export. Moreover, the commerce clause is cast, not in terms of a prohibition against taxes, but in terms of a power on the part of Congress to regulate commerce. The commerce clause is a limitation upon the power of the states, even in absence of action by Congress. The scope of this limitation has been determined by the Supreme Court of the United States in an effort to maintain an area of trade free from state interference and at the same time to make interstate commerce pay its way. That accommodation has been made by upholding taxes designed to make interstate commerce bear a fair share of the cost of the local government from which it receives benefits. No such qualifications can be written into the import-export

clause, which creates only one exception, namely, in regard to taxes absolutely necessary for executing a state's inspection laws. Richfield Oil Corp. v. State Bd. of Equalization (1946), 329 U. S. 69, 91 L. ed. 80, 67 S. Ct. 156.

"A state tax in violation of the import and export clause necessarily is a prohibited burden on interstate commerce, but the import and export clause may be violated by a tax even though it does not constitute such a burden. Hence, non discriminatory as well as discriminatory exactions are forbidden by the import-export clause." 20 A.L.R. 2d 154.

The matter is clearly set forth by Mr. Justice DOUG-LAS, in his partial dissent, in *Joseph v. Carter & Weekes Stevedoring Co.*, supra, with whom Mr. Justice RUTLEDGE concurred, where he says, at page 434, "First. I think the tax is valid insofar as it reaches the gross receipts from loading and unloading vessels engaged in interstate commerce." He would overrule *Puget Sound* or at least greatly modify it. However, he still holds the tax to be invalid and continues, at page 444, as follows: "Second. I think the tax is unconstitutional insofar as it reaches the gross receipts from loading and unloading vessels engaged in foreign commerce. Such a tax is repugnant to Article I, §10, Clause 2 of the Constitution which provides that 'No State shall, without the Consent of the Congress, lay any Imposts or Duties on Imports or Exports, except what may be absolutely necessary for executing its inspection Laws . . . .'

"Loading and unloading are a part of 'the exporting process' which the import-export Clause protects from state taxation. See Thames & Mersey Ins. Co. v. United States, 237 U. S. 19, 27, 59 L. ed. 821, 824, 35 S. Ct. 496, Ann. Cas. 1915D, 1087. Activity which is a 'step in exportation' has that immunity. A. G. Spalding &

Bros. v. Edwards, 262 U. S. 66, 68, 67 L. ed. 865, 867, 43 S. Ct. 485. As the Court says, loading and unloading cargo are 'a continuation of the transportation'. Indeed, the commencement of exportation would occur no later. See Richfield Oil Corp. v. State Bd. of Equalization, 329 U. S. 69, ante, 80, 67 S. Ct. 156. And the gross receipts tax is an impost on an export within the meaning of the Clause, since the incident 'which gave rise to the accrual of the tax was a step in the export process'. Richfield Oil Corp. v. State Bd. of Equalization, supra (329 U. S. 84, ante, 93, 67 S. Ct. 156).

"As we pointed out in that case, the Commerce Clause and the Import-Export Clause 'though complementary, serve different ends'. 329 U. S. p. 76, ante, 89, 67 S. Ct. 156. Since the Commerce Clause does not expressly forbid any tax, the Court has been free to balance local and national interests. Taxes designed to make interstate commerce bear a fair share of the cost of local government from which it receives benefits have been upheld; taxes which discriminate against interstate commerce, which impose a levy for the privilege of doing it, or which place an undue burden on it have been invalidated. But the Import-Export Clause is written in terms which admit of no exception but the single one it contains. Accordingly a state tax might survive the tests of validity under the Commerce Clause and fail to survive the Import-Export Clause. For me the present tax is a good example."

Clearly all of the activities of the appellant fall into the description of incidents or steps in the import-export process, as found by the Supreme Court of the United States in *Texas Transport & Terminal Co. v. New Orleans,* supra. We hold, that this tax is invalid as to this appellant as a violation of the Commerce

Clause, Art. I, Sec. 8, Clause 3 of the Constitution of the United States and even if there be some confusion and disagreement in the case law concerning this phase of the problem, the levy of this tax against this appellant, is clearly in violation of the Import-Export Clause, Art. I, Sec. 10, Clause 2 of the Constitution of the United States.

Decision reversed.