330 U.S. 422 (1947)
JOSEPH, COMPTROLLER, ET AL.
v.
CARTER & WEEKES STEVEDORING CO.
No. 29.
Supreme Court of United States.
Argued March 1, 1946.
Reargued November 12, 1946.
Decided March 10, 1947.
CERTIORARI TO THE SUPREME COURT OF NEW YORK.[*]
*423 Isaac C. Donner argued the cause for petitioners. With him on the brief were John J. Bennett and Harry Katz.
Samuel M. Lane argued the cause for respondents. With him on the brief was Roger S. Baldwin.
Smith Troy, Attorney General, filed a brief on behalf of the State of Washington, as amicus curiae, urging reversal.
John Ambler, Ben C. Grosscup and Albert E. Stephan filed a brief for the Puget Sound Stevedoring Company, acting on behalf of the Association of Washington Stevedores, as amicus curiae.
MR. JUSTICE REED delivered the opinion of the Court.
These two writs of certiorari bring before this Court contentions in regard to the application to the respective respondents, Carter & Weekes Stevedoring Company and John T. Clark & Son, of New York City, of the general *424 business tax laws covering, when both cases are considered, the years 1937 to 1941, inclusive.[1] The character of the taxes in issue will appear from a section, set out below, of a local law imposing the tax for 1939 and 1940.[2] The respective taxpayers are liable also for the general income and ad valorem taxes for the State and City of New York. Both respondents are corporations engaged in the business of general stevedoring. For these cases, the business of respondents may be considered as consisting only of taking freight from a convenient place on the pier or lighter wholly within the territorial limits of New York City and *425 storing it properly for safety and for handling in or on the outgoing vessel alongside, or of similarly unloading a vessel on its arrival. The vessels moved in interstate or foreign commerce, without a call at any other port of New York. We do not find it necessary to consider separately interstate and foreign commerce. The Commerce Clause covers both.
Through statutory proceedings unnecessary to particularize, the Comptroller of the City of New York determined that the respondents were liable for percentage taxes upon the entire gross receipts from the above activities for the years in question under the provisions of the respective local laws to which reference has been made. Review of these determinations was had by respondents in the Supreme Court of New York, Appellate Division. The determinations of the Comptroller were annulled on the authority of Puget Sound Stevedoring Co. v. Tax Commission, 302 U.S. 90. 269 App. Div. 685, 54 N.Y.S.2d 380, 383. These orders were affirmed by the Court of Appeals, 294 N.Y. 906, 908, 63 N.E.2d 112, and remittiturs issued stating that the Court of Appeals affirmed on the ground that the local laws as applied in these cases were in violation of Article I, § 8, Clause 3, of the Constitution of the United States.[3] Writs of certiorari to this Court were sought and granted on the issue of whether or not this tax on these respondents constituted an unconstitutional burden on commerce.
Petitioners recognize the force of the Puget Sound case as a precedent. Their argument is that subsequent holdings of this Court have indicated that the reasons which underlay the decision are no longer controlling in judicial examination of the constitutionality of state taxation of *426 the gross proceeds derived from commerce, subject to federal regulation. They cite, among others, these later decisions: Western Live Stock v. Bureau of Revenue, 303 U.S. 250; Southern Pacific Co. v. Gallagher, 306 U.S. 167; McGoldrick v. Berwind-White Co., 309 U.S. 33; Department of Treasury v. Wood Preserving Corp., 313 U.S. 62.
In the Puget Sound case a state tax on gross receipts, indistinguishable from that laid by New York City in this case, was held invalid as applied to stevedoring activities exactly like those with which we are here concerned. The Puget Sound opinion pointed out, p. 92 et seq., that transportation by water is impossible without loading and unloading. Those incidents to transportation occupy the same relation to that commerce whether performed by the crew or by stevedore, contracting independently to handle the cargo. The movement of cargo off and on the ship is substantially a continuation of the transportation. Cf. Baltimore & O.S.W.R. Co. v. Burtch, 263 U.S. 540.
It is trite to repeat that the want of power in the confederation to regulate commerce was a principal reason for the adoption of the Constitution. The Commerce Clause bears no limitation of power upon its face and, when the Congress acts under it, interpretation has suggested none, except such as may be prescribed by the Constitution. Gibbons v. Ogden, 9 Wheat. 1, 196; United States v. Carolene Products Co., 304 U.S. 144, 147; North American Co. v. S.E.C., 327 U.S. 686, 704. On the other hand, the Constitution, by words, places no limitation upon a state's power to tax the things or activities or persons within its boundaries. What limitations there are spring from applications to state tax situations of general clauses of the Constitution. E.g., Art. I, § 10, Cl. 2 and 3; New York Indians, 5 Wall. 761; Board of County Commissioners v. United States, 308 U.S. 343; Bell's Gap R. Co. v. Pennsylvania, 134 U.S. 232, 237; Lawrence v. *427 State Tax Commission, 286 U.S. 276, 284; Henderson Bridge Co. v. Henderson City, 173 U.S. 592, 614-15; New York Rapid Transit Corp. v. City of New York, 303 U.S. 573, 581-82. From the Commerce Clause itself, there comes, also, an abridgment of the state's power to tax within its territorial limits. This has arisen from long-continued judicial interpretation that, without congressional action, the words themselves of the Commerce Clause forbid undue interferences by the states with interstate commerce[4] and that this rule applies in full force to an unapportioned[5] tax on the gross proceeds from interstate business,[6] where the taxes were not in lieu of ad valorem taxes on property.[7]
We do not think that a tax on gross income from stevedoring, obviously a "continuation of the transportation," is a tax apportioned to income derived from activities within the taxing state. The transportation in commerce, at the least, begins with loading and ends with unloading. Loading and unloading has effect on transportation *428 outside the taxing state because those activities are not only preliminary to but are an essential part of the safety and convenience of the transportation itself.
When we come to weigh the burden or interference of this tax on the gross receipts from interstate commerce, the purposes of that portion of the Commerce Clause  the freeing of business from unneighborly regulations that inhibit the intercourse which supplies reciprocal wants by commerce[8]  is a significant factor for consideration. An interpretation of the text to leave the states free to tax commerce until Congress intervened would have permitted intolerable discriminations. Nippert v. City of Richmond, 327 U.S. 416, and cases collected in notes 13, 14, 15 and 16. Nevertheless, a proper regard for the authority of the states and their right to require interstate commerce to contribute by taxes to the support of the state governments which make their interstate commerce possible, has led Congress, over a long period, to leave intact the judicial rulings, referred to above, that apportioned, non-discriminatory gross receipt taxes or those fairly levied in lieu of property taxes conformed to the requirements of the Commerce Clause. As the power lies in Congress under the Clause to make any desired adjustment in the taxation area, its acquiescence in our former rulings on state taxation indicates its agreement with the adjustments of the competing interests of commerce and necessary state revenues.[9] There is another reason that may be the basis for the acceptance, almost *429 complete, by Congress of the judicial interpretations in this field. This is that a wide latitude exists for permissible state taxation. This term, in an effort to show that the reach of the Commerce Clause did not destroy the state's power to make commerce pay its way, we elaborated the fact that taxes on the commerce itself was not the sole source of state revenue from that commerce. Freeman v. Hewit, supra, p. 254; see also Adams Mfg. Co. v. Storen, supra, 310.
A power in a state to tax interstate commerce or its gross proceeds, unhampered by the Commerce Clause, would permit a multiple burden upon that commerce. This has been noted as ground for their invalidation. Western Live Stock v. Bureau, 303 U.S. 250, 255. The selection of an intrastate incident as the taxable event actually carries a similar threat to the commerce but, where the taxable event is considered sufficiently disjoined from the commerce, it is thought to be a permissible state levy.[10] This result generally is reached because the local incident selected is one that is essentially local and is not repeated in each taxing unit. In the present case, the threat of a multiple burden, except in the few instances in the record of interstate, in distinction to foreign, commerce, is absent. The multiple burden on interstate transportation from taxation of the gross receipts from stevedoring arises from the possibility of a similar tax for unloading. The actual effect on the cost of carrying on the commerce does not differ from that imposed by any other tax exaction  ad valorem, net income or excise. Cf. Western Live Stock v. Bureau, supra, 254. We need consider only whether or not the loading and unloading is distinct enough from the commerce to permit the tax on the gross.
*430 On precedent, the Puget Sound case is controlling. It was promptly and recently cited with approval.[11] It appears in Adams Mfg. Co. v. Storen[12] in support of the possible double tax argument against levies on interstate commerce. In Western Live Stock v. Bureau, supra, 258, it was adverted to as a case for comparison with a ruling that "preparing, printing and publishing magazine advertising is peculiarly local and distinct from its circulation whether or not that circulation be interstate commerce." The case was not included in the Court's opinion in Gwin, White & Prince, Inc. v. Henneford,[13] where a state gross receipts tax on income from marketing fruit interstate was invalidated under the Commerce Clause, or in McGoldrick v. Berwind-White Co.,[14] though relied upon in the concurring opinion in the first at p. 442 and the dissent in the second at p. 62. Upon examination this history gives an impression that there has been a doubt as to the continued vitality of Puget Sound. We come now face to face with the problem of overruling or approving the case.
Since Puget Sound there has been full consideration of how far a state may go in taxing intrastate incidents closely related in time and movement to the interstate commerce. The cases that lend strongest support to petitioner's argument for overruling the Puget Sound decision have been referred to above. We comment further upon them. The 2% excise tax levied by New Mexico on the gross receipts of publishers from advertising, upheld in Western Live Stock, was found to be an exaction *431 for carrying on a local business.[15] The Gallagher case turns expressly on our conclusion that a use tax is validly levied on an intrastate event, "separate and apart from interstate commerce," p. 176, and the Wood Preserving case[16] reached a similar result by reason of the fact that the taxpayer sold and delivered its ties intrastate before transportation began, 313 U.S. at 67. This is likewise true of American Mfg. Co. v. St. Louis, 250 U.S. 459, as explained in the Storen case.[17] When we examine the *432 Berwind-White tax on the purchasers of tangible personal property for consumption, there is the same reliance upon the local character of the sale. pp. 43, 47, 49, 58.[18] We there said, p. 48:
"Certain types of tax may, if permitted at all, so readily be made the instrument of impeding or destroying interstate commerce as plainly to call for their condemnation as forbidden regulations. Such are the taxes already noted which are aimed at or discriminate against the commerce or impose a levy for the privilege of doing it, or tax interstate transportation or communication or their gross earnings, or levy an exaction on merchandise in the course of its interstate journey."
*433 Though all of these cases were closely related to transportation in commerce both in time and movement, it will be noted that in each there can be distinguished a definite separation between the taxable event and the commerce itself. We have no reason to doubt the soundness of their conclusions.
Stevedoring is more a part of the commerce than any of the instances to which reference has just been made. Although state laws do not discriminate against interstate commerce or in actuality or by possibility subject it to the cumulative burden of multiple levies, those laws may be unconstitutional because they burden or interfere with commerce. See Southern Pacific Co. v. Arizona, 325 U.S. 761, 767. Stevedoring, we conclude, is essentially a part of the commerce itself and therefore a tax upon its gross receipts or upon the privilege of conducting the business of stevedoring for interstate and foreign commerce, measured by those gross receipts, is invalid. We reaffirm the rule of Puget Sound Stevedoring Company. "What makes the tax invalid is the fact that there is interference by a State with the freedom of interstate commerce." Freeman v. Hewit, supra, p. 256. Such a rule may in practice prohibit a tax that adds no more to the cost of commerce than a permissible use or sales tax. What lifts the rule from formalism is that it is a recognition of the effects of state legislation and its actual or probable consequences. Not only does it follow a line of precedents outlawing taxes on the commerce itself but it has reason to support it in the likelihood that such legislation will flourish more luxuriantly where the most revenue will come from foreign or interstate commerce. Thus in port cities and transportation or handling centers, without discrimination against out-of-state as compared with local business, larger proportions of necessary revenue could be obtained from the flow of commerce. The avoidance of such a local *434 toll on the passage of commerce through a locality was one of the reasons for the adoption of the Commerce Clause.
Affirmed.
MR. JUSTICE BLACK dissents.
MR. JUSTICE DOUGLAS, with whom MR. JUSTICE RUTLEDGE concurs, dissenting in part.
First. I think the tax is valid insofar as it reaches the gross receipts from loading and unloading vessels engaged in interstate commerce.
Puget Sound Stevedoring Co. v. Tax Commission, 302 U.S. 90, makes clear that respondents' activities in loading and unloading the vessels are interstate commerce. That case followed a long line of decisions[1] when it held in 1937 that a State could not tax the privilege of engaging in interstate or foreign commerce by exacting a percentage of the gross receipts.
Those cases, like the present one, involved no exaction by the State of a license to engage in interstate commerce on the payment of a flat license tax or otherwise. Cf. Leloup v. Port of Mobile, 127 U.S. 640; Crutcher v. Kentucky, 141 U.S. 47; Bowman v. Continental Oil Co., 256 U.S. 642; Cooney v. Mountain States Tel. Co., 294 U.S. 384; Murdock v. Pennsylvania, 319 U.S. 105, 114. Nor did they, any more than the present case, concern legislation which expressed hostility to interstate commerce by discriminating against it. Cf. Best & Co. v. Maxwell, 311 U.S. 454; Nippert v. City of Richmond, 327 U.S. 416. Although all or like business of a local nature was subject *435 to the same tax, the interstate business was granted immunity. The theory, as expressed in Philadelphia & Southern S.S. Co. v. Pennsylvania, 122 U.S. 326, 336, was that taxation was one form of regulation and a tax on the gross receipts from interstate transportation would be "a regulation of the commerce, a restriction upon it, a burden upon it. Clearly this could not be done by the state without interfering with the power of Congress."
The tax in that case was a tax on the gross receipts from fares and freight for the transportation of persons and goods in interstate and foreign commerce. It was unapportioned. As we shall see, the holding in the Philadelphia & Southern S.S. Co. case has not been impaired. But the principle it announced  that a tax on the gross receipts was forbidden because it was a regulation of interstate or foreign commerce  was not given full scope. For soon gross receipts taxes on businesses engaged in interstate commerce (including transportation or communication) were sustained where they were not discriminatory and where they were fairly apportioned to the commerce carried on in the taxing state.[2]Maine v. Grand Trunk Ry. Co., 142 U.S. 217. Their validity was established whether they were employed as a measure of the value of a local franchise (Maine v. Grand Trunk Ry. Co., supra; Wisconsin & M. Ry. Co. v. Powers, 191 U.S. 379) or were used in lieu of all other property taxes to measure the value of the property in the State. United States Express Co. v. Minnesota, 223 U.S. 335; Cudahy Packing Co. v. Minnesota, 246 U.S. 450; Illinois Central R. Co. v. Minnesota, 309 U.S. 157.
The distinction between an apportioned gross receipts tax and a tax on all the gross receipts of an interstate business, *436 such as was involved in Philadelphia & Southern S.S. Co. v. Pennsylvania, supra, pp. 335-336, was explained in Western Live Stock v. Bureau of Revenue, 303 U.S. 250, 256, which was decided in 1938. The Court stated that the latter type of tax could be imposed or added to "with equal right by every state which the commerce touches, merely because interstate commerce is being done, so that without the protection of the commerce clause it would bear cumulative burdens not imposed on local commerce. .. . The multiplication of state taxes measured by the gross receipts from interstate transactions would spell the destruction of interstate commerce and renew the barriers to interstate trade which it was the object of the commerce clause to remove." This explanation of the vice of the unapportioned gross receipts tax had been earlier suggested in Case of the State Freight Tax, 15 Wall. 232, 280, and has been accepted by our decisions since the Western Live Stock case. Adams Mfg. Co. v. Storen, 304 U.S. 307, 311; Gwin, White & Prince, Inc. v. Henneford, 305 U.S. 434, 438-440; McGoldrick v. Berwind-White Co., 309 U.S. 33, 45-46. In both Adams Mfg. Co. v. Storen, supra, and Gwin, White & Prince, Inc. v. Henneford, supra, unapportioned gross receipts taxes as applied to the receipts from interstate sales were held invalid. It was said that the vice of such a tax was that interstate commerce would be subjected "to the risk of a double tax burden to which intrastate commerce is not exposed . .. ." Adams Mfg: Co. v. Storen, supra, p. 311. Or as stated in Gwin, White & Prince, Inc. v. Henneford, supra, p. 439:
"Here the tax, measured by the entire volume of the interstate commerce in which appellant participates, is not apportioned to its activities within the state. If Washington is free to exact such a tax, other states to which the commerce extends may, with equal right, *437 lay a tax similarly measured for the privilege of conducting within their respective territorial limits the activities there which contribute to the service. The present tax, though nominally local, thus in its practical operation discriminates against interstate commerce, since it imposes upon it, merely because interstate commerce is being done, the risk of a multiple burden to which local commerce is not exposed."
As was later stated in Southern Pacific Co. v. Gallagher, 306 U.S. 167, 175, as respects taxes on gross receipts from interstate transactions or interstate transportation, "The measurement of a tax by gross receipts where it cannot result in a multiplication of the levies it upheld."
Under that view the Philadelphia & Southern S.S. Co. case would be decided one way and the Puget Sound Stevedoring Co. case the other. As we have noted, the tax in the Philadelphia & Southern S.S. Co. case was a gross receipts tax on fares and freight for the transportation of persons and goods in interstate and foreign commerce. It was unapportioned. And there was the risk of multiple taxation to which local transportation, though also taxed, was not subjected. The same was true of Ratterman v. Western Union Tel. Co., 127 U.S. 411; Western Union Telegraph Co. v. Alabama, 132 U.S. 472; and Meyer v. Wells, Fargo & Co., 223 U.S. 298.
But in the Puget Sound case any risk of multiple taxation was absent. The same is true of the present case. For in each the activity of loading and unloading was confined exclusively to the State that imposed the tax. No other State could tax the same activity.[3] The tax *438 therefore is in its application nothing more than a gross receipts tax apportioned to reach only income derived from activities within the taxing State. The gross receipts reflect values attributable to the business or property wholly within the taxing state. Under the test of our recent decisions (Western Live Stock v. Bureau of Revenue, supra; Adams Mfg. Co. v. Storen, supra; Gwin, White & Prince, Inc. v. Henneford, supra), the tax would therefore seem to be unobjectionable.
It is true, however, that taxes on gross receipts of transportation companies and other interstate enterprises were held invalid in cases prior to the Puget Sound case, even though all of the activities were confined to the taxing state and could not be taxed by any other state. Galveston, Harrisburg & S.A. Ry. Co. v. Texas, 210 U.S. 217; New Jersey Bell Tel. Co. v. State Board, 280 U.S. 338. Cf. Fargo v. Michigan, 121 U.S. 230. The explanation given in the Galveston case was that a tax on the gross receipts was a regulation of commerce, as the Philadelphia & Southern S.S. Co. case held. It distinguished Maine v. Grand Trunk Ry. Co., supra, and the other apportionment cases on the ground that they involved taxes on property, the gross receipts being taken as the measure of the value of the property. The Court said (210 U.S., p. 227):
"It appears sufficiently, perhaps from what has been said, that we are to look for a practical rather than a logical or philosophical distinction. The State must be allowed to tax the property and to tax it at its actual value as a going concern. On the other hand the State cannot tax the interstate business. *439 The two necessities hardly admit of an absolute logical reconciliation. Yet the distinction is not without sense. When a legislature is trying simply to value property, it is less likely to attempt to or effect injurious regulation than when it is aiming directly at the receipts from interstate commerce. A practical line can be drawn by taking the whole scheme of taxation into account. That must be done by this court as best it can. Neither the state courts nor the legislatures, by giving the tax a particular name or by the use of some form of words, can take away our duty to consider its nature and effect. If it bears upon commerce among the States so directly as to amount to a regulation in a relatively immediate way, it will not be saved by name or form."
The Galveston case, like the Philadelphia & Southern S.S. Co. case, involved a tax applicable to transportation companies alone.[4] Whatever may be said for the proposition *440 that a gross receipts tax, applicable only to transportation companies, may readily become the instrument for impeding or destroying interstate commerce, that consideration has no relevancy here. For in the present case, as in the Puget Sound case, all businesses are taxed alike. There is equality throughout; and interstate commerce is taxed no heavier than local business. Political restraints, perhaps lacking when a particular type of business is singled out for special taxation, would not be absent here.
Moreover, the difference between a tax on property measured by gross receipts and a tax on the gross receipts does not appear significant in constitutional terms when the issue is one of undue burden on interstate commerce. Either might be an instrument to that end. The apportioned gross receipts tax in Maine v. Grand Trunk Ry. Co., supra, was in terms "an annual excise tax for the privilege of exercising" the corporation's franchises in the State. 142 U.S. p. 219. The Court stated, p. 228, "a resort to those receipts was simply to ascertain the value of the business done by the corporation, and thus obtain a guide to a reasonable conclusion as to the amount of the excise tax which should be levied. . . ." As much can be said of the present case and of the Puget Sound case. While the tax is in terms one on the privilege of doing business, resort is made to the gross receipts merely to ascertain the value of the business. No vice of extra-territoriality or multiple taxation is involved. The value taxed is attributable to business within the taxing State and may not be reached by any other State. That value *441 is, of course, augmented by the interstate character of the business. But the same is true in any apportionment case. Galveston, Harrisburg & S.A. Ry. Co. v. Texas, supra, p. 225; Cudahy Packing Co. v. Minnesota, supra, pp. 455-456.
Respondents pay other taxes to New York City, including the usual property taxes. But so long as a tax does not discriminate against interstate commerce and is fairly apportioned to the activities in the taxing state, taxing the business twice is for constitutional purposes no different than doubling a single tax. If the whole scheme of taxation adopted by a particular State were taken into account, it might be that a case of discrimination against interstate commerce could be made out. But there is no suggestion that this is such a case. Nor can we say that the system which has been adopted here bids fair to be more harmful to interstate commerce than a system designed to raise the same amount of revenue by the use of a gross receipts tax in lieu of property taxes.
Moreover, as noted in Gwin, White & Prince, Inc. v. Henneford, supra, p. 438, and in Adams Mfg. Co. v. Storen, supra, pp. 312-313, there have been other cases sustaining a gross receipts tax on interstate enterprises where the gross receipts tax fairly measured the value of a local privilege or franchise and all risk of multiple taxation was absent. Ficklen v. Shelby County Taxing Dist., 145 U.S. 1, upheld a state license tax imposed upon the privilege of doing a brokerage business within the State and measured by the gross receipts from sales of merchandise shipped into the State for delivery after sales were made. American Mfg. Co. v. St. Louis, 250 U.S. 459, upheld a municipal license tax on the gross receipts of a manufacturer who was producing goods for interstate commerce. The tax was sustained as an excise upon the conduct of a manufacturing enterprise. Those taxes, like property taxes or taxes on activities confined solely to *442 the taxing state (New York, Lake Erie & W.R. Co. v. Pennsylvania, 158 U.S. 431; Utah Power & Light Co. v. Pfost, 286 U.S. 165; Coverdale v. Arkansas-Louisiana Pipe Line Co., 303 U.S. 604), have no cumulative effect caused by the interstate character of the business. They are apportioned to the activities taxed, all of which are intrastate. Plainly the loading and unloading involved in the present case are activities as local in character as the brokerage activities in the Ficklen case or the manufacturing business in the American Mfg. Co. case. One has as close and as immediate a relationship to interstate commerce as the other. Cf. United States v. Darby, 312 U.S. 100. If one gives rise to a taxable event for which the State may exact a portion of the gross receipts, it is difficult to see why the other does not. The practical effect on interstate commerce is the same in each.
In McGoldrick v. Berwind-White Co., supra, p. 52, we held that a sales tax on the purchase of property at the end of its interstate journey was not to be distinguished from a tax on the property itself. For taxation of the sale was merely taxation of the exercise of one of the constituent elements of the property. Unless formal doctrine is to be restored to this field, the label which the tax bears should not be controlling; and the tax should be sustained unless it evinces hostility to interstate commerce or in practical operation obstructs or impedes it. Either result may obtain whether the tax be called a property tax or a gross receipts tax. As McGoldrick v. Berwind-White Co., supra, p. 48, states:
"Certain types of tax may, if permitted at all, so readily be made the instrument of impeding or destroying interstate commerce as plainly to call for their condemnation as forbidden regulations. Such are the taxes already noted which are aimed at or discriminate against the commerce or impose a levy for the privilege of doing it, or tax interstate transportation *443 or communication or their gross earnings, or levy an exaction on merchandise in the course of its interstate journey. Each imposes a burden which intrastate commerce does not bear, and merely because interstate commerce is being done places it at a disadvantage in comparison with intrastate business or property in circumstances such that if the asserted power to tax were sustained, the states would be left free to exert it to the detriment of the national commerce."
Measured by that test, the present tax is not invalid. "Even interstate business must pay its way. . . ." Postal Telegraph-Cable Co. v. Richmond, 249 U.S. 252, 259. A non-discriminatory gross receipts tax, apportioned to local activity in the taxing state, is to be judged by its practical effect. As we stated in Wisconsin v. J.C. Penney Co., 311 U.S. 435, 444:
"The Constitution is not a formulary. It does not demand of states strict observance of rigid categories nor precision of technical phrasing in their exercise of the most basic power of government, that of taxation. For constitutional purposes the decisive issue turns on the operating incidence of a challenged tax. A state is free to pursue its own fiscal policies, unembarrassed by the Constitution, if by the practical operation of a tax the state has exerted its power in relation to opportunities which it has given, to protection which it has afforded, to benefits which it has conferred by the fact of being an orderly, civilized society."
All local taxes on interstate businesses affect to some degree the commerce and increase the cost of doing it. Matters of form should not be decisive if the tax threatens no harm to interstate commerce.
Prior to McGoldrick v. Berwind-White Co., supra, it had long been said that "Interstate commerce cannot be taxed *444 at all, even though the same amount of tax should be laid on domestic commerce, or that which is carried on solely within the state." Robbins v. Shelby County Taxing Dist., 120 U.S. 489, 497. That was the philosophy of the Philadelphia & Southern S.S. Co. case. And see Fargo v. Michigan, supra, pp. 246-247. But McGoldrick v. Berwind-White Co., supra, did not adhere to that formal doctrine. It followed Wiloil Corp. v. Pennsylvania, 294 U.S. 169, and upheld a "non-discriminatory tax on the sale to a buyer within the taxing state of a commodity shipped interstate in performance of the sales contract, not upon the ground that the delivery was not a part of interstate commerce . . . but because the tax was not a prohibited regulation of, or burden on, that commerce." Illinois Natural Gas Co. v. Central Illinois Public Service Co., 314 U.S. 498, 505. The test adopted was whether the tax on the local activity as a practical matter was being used to place interstate commerce at a competitive disadvantage or obstruct or impede it. That should be the approach here; "the logic of words should yield to the logic of realities." Mr. Justice Brandeis dissenting, Di Santo v. Pennsylvania, 273 U.S. 34, 43. The failure of the Court to adhere to the philosophy of our recent cases corroborates the impression which some of us had that Freeman v. Hewit, 329 U.S. 249, marked the end of one cycle under the Commerce Clause and the beginning of another.
Second. I think the tax is unconstitutional insofar as it reaches the gross receipts from loading and unloading vessels engaged in foreign commerce. Such a tax is repugnant to Article I, § 10, Clause 2 of the Constitution, which provides that "No State shall, without the Consent of the Congress, lay any Imposts or Duties on Imports or Exports, except what may be absolutely necessary for executing it's inspection Laws. . . ."
*445 Loading and unloading are a part of "the exporting process" which the Import-Export Clause protects from state taxation. See Thames & Mersey Ins. Co. v. United States, 237 U.S. 19, 27. Activity which is a "step in exportation" has that immunity. Spalding & Bros. v. Edwards, 262 U.S. 66, 68. As the Court says, loading and unloading cargo are "a continuation of the transportation." Indeed, the commencement of exportation would occur no later. See Richfield Oil Corp. v. State Board, 329 U.S. 69. And the gross receipts tax is an impost on an export within the meaning of the Clause, since the incident "which gave rise to the accrual of the tax was a step in the export process." Richfield Oil Corp. v. State Board, supra, p. 84.
As we pointed out in that case, the Commerce Clause and the Import-Export Clause "though complementary, serve different ends." 329 U.S. p. 76. Since the Commerce Clause does not expressly forbid any tax, the Court has been free to balance local and national interests. Taxes designed to make interstate commerce bear a fair share of the cost of local government from which it receives benefits have been upheld; taxes which discriminate against interstate commerce, which impose a levy for the privilege of doing it, or which place an undue burden on it have been invalidated. But the Import-Export Clause is written in terms which admit of no exception but the single one it contains. Accordingly a state tax might survive the tests of validity under the Commerce Clause and fail to survive the Import-Export Clause. For me the present tax is a good example.
MR. JUSTICE MURPHY joins in this dissent except as to the second part, as to which he is of the opinion that the tax in relation to the gross receipts from loading and unloading vessels engaged in foreign commerce is constitutional.
NOTES
[*] Together with No. 30, Joseph, Comptroller, et al. v. John T. Clark & Son, also on certiorari to the same Court.
[1] The taxes in question were levied by the City of New York by a series of local laws, No. 22 of 1937, No. 20 of 1938, No. 103 of 1939, No. 78 of 1940, No. 47 of 1941. The local laws were passed pursuant to authorization by the State of New York. See Laws of New York 1940, Ch. 245. There is no dispute as to the general validity of the local laws. See McGoldrick v. Berwind-White Coal Mining Co., 309 U.S. 33, and New York Rapid Transit Corp. v. City of New York, 303 U.S. 573. These cases involved other phases of these local laws.

Certiorari granted, 326 U.S. 713; argued March 1, 1946; restored to the docket for reargument April 22, 1946.
[2] Local Laws of the City of New York (1940), No. 78:

"§ R41-2.0. Imposition of tax. a. For the privilege of carrying on or exercising for gain or profit within the city any trade, business, profession, vocation or commercial activity other than a financial business, or of making sales to persons within such city, for each of the periods of one year, or any part thereof, beginning on July first of the years nineteen hundred thirty-nine and nineteen hundred forty, every person shall pay an excise tax which shall be equal to one-tenth of one percentum upon all receipts received in and/or allocable to the city from such profession, vocation, trade, business or commercial activity exercised or carried on by him during the calendar year in which such period shall commence, . . . ."
No problem of allocation or apportionment is involved. See § b. No question is raised by petitioner that any part of the tax is allocable to receipts properly attributable to doing business in New York City, if all of the receipts are not subject to the local act. § R41-3.0.
[3] "The Congress shall have Power . . . To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes; . . . ."
[4] Southern Pacific Co. v. Arizona, 325 U.S. 761, 767-69, and cases cited; Morgan v. Virginia, 328 U.S. 373, 379, and cases cited, n. 17; Freeman v. Hewit, 329 U.S. 249; Richfield Oil Corp. v. State Board of Equalization, 329 U.S. 69, 75.
[5] Compare Maine v. Grand Trunk R. Co., 142 U.S. 217; Oklahoma v. Wells, Fargo & Co., 223 U.S. 298, 301; Underwood Typewriter Co. v. Chamberlain, 254 U.S. 113; Hans Rees' Sons v. North Carolina, 283 U.S. 123; Illinois Central R. Co. v. Minnesota, 309 U.S. 157.
[6] Fargo v. Michigan, 121 U.S. 230; Ratterman v. Western Union Telegraph Co., 127 U.S. 411, 428; Leloup v. Port of Mobile, 127 U.S. 640; Western Union Telegraph Co. v. Alabama, 132 U.S. 472; Galveston, Harrisburg & San Antonio R. Co. v. Texas, 210 U.S. 217; Oklahoma v. Wells, Fargo & Co., 223 U.S. 298, 300; Minnesota Rate Cases, 230 U.S. 352, 400; Crew Levick Co. v. Pennsylvania, 245 U.S. 292, 295; Fisher's Blend Station v. Tax Comm'n, 297 U.S. 650, 655; Adams Mfg. Co. v. Storen, 304 U.S. 307, 312; Freeman v. Hewit, supra.
[7] Postal Telegraph Cable Co. v. Adams, 155 U.S. 688, 698; United States Express Co. v. Minnesota, 223 U.S. 335, 346-48.
[8] Federalist 7, 22, 42; Baldwin v. G.A.F. Seelig, Inc., 294 U.S. 511, 523.
[9] See Clark Distilling Co. v. Western Maryland R. Co., 242 U.S. 311, 326; United States v. Hill, 248 U.S. 420; Whitfield v. Ohio, 297 U.S. 431; Kentucky Whip & Collar Co. v. Illinois Central R. Co., 299 U.S. 334; Prudential Ins. Co. v. Benjamin, 328 U.S. 408, 430; Southern Pacific Co. v. Arizona, 325 U.S. 761, 769; Freeman v. Hewit, 329 U.S. 249, 253.
[10] Western Live Stock v. Bureau, supra, 258-260; Southern Pacific Co. v. Gallagher, 306 U.S. 167, 176; McGoldrick v. Berwind-White Co., 309 U.S. 33, 48; Dept. of Treasury v. Wood Corp., 313 U.S. 62.
[11] Coverdale v. Pipe Line Co., 303 U.S. 604, 609; Southern Pacific Co. v. Gallagher, 306 U.S. 167, 178; Freeman v. Hewit, supra, p. 257.
[12] 304 U.S. 307, 312.
[13] 305 U.S. 434.
[14] 309 U.S. 33.
[15] 303 U.S. at 257.

"All the events upon which the tax is conditioned  the preparation, printing and publication of the advertising matter, and the receipt of the sums paid for it  occur in New Mexico and not elsewhere." P. 260. "So far as the advertising rates reflect a value attributable to the maintenance of a circulation of the magazine interstate, we think the burden on the interstate business is too remote and too attenuated to call for a rigidly logical application of the doctrine that gross receipts from interstate commerce may not be made the measure of a tax. . . . Practical rather than logical distinctions must be sought." P. 259.
The alternate ground, p. 260, that such a local tax cannot be levied elsewhere is inapposite in such a foreign commerce situation as this.
[16] See Harvester Co. v. Dept. of Treasury, 322 U.S. 340, 348.
[17] 304 U.S. at 312-13:

"The state court and the appellees rely strongly upon American Mfg. Co. v. St. Louis, 250 U.S. 459, as supporting the tax on appellant's total gross receipts derived from commerce with citizens of the State and those of other States or foreign countries. But that case dealt with a municipal license fee for pursuing the occupation of a manufacturer in St. Louis. The exaction was not an excise laid upon the taxpayer's sales or upon the income derived from sales. The tax on the privilege for the ensuing year was measured by a percentage of the past year's sales. The taxpayer had during the preceding year removed some of the goods manufactured to a warehouse in another State and, upon sale, delivered them from the warehouse. It contended that the city was without power to include these sales in the measure of the tax for the coming year. The court held, however, that the tax was upon the privilege of manufacturing within the State and it was permissible to measure the tax by the sales price of the goods produced rather than by their value at the date of manufacture. If the tax there under consideration had been a sales tax the city could not have measured it by sales consummated in another State."
Cf. Freeman v. Hewit, 329 U.S. 249, 252.
[18] 309 U.S. at 49: "Its only relation to the commerce arises from the fact that immediately preceding transfer of possession to the purchaser within the state, which is the taxable event regardless of the time and place of passing title, the merchandise has been transported in interstate commerce and brought to its journey's end. Such a tax has no different effect upon interstate commerce than a tax on the `use' of property which has just been moved in interstate commerce, sustained in Monamotor Oil Co. v. Johnson, 292 U.S. 86; Henneford v. Silas Mason Co., supra; Felt & Tarrant Mfg. Co. v. Gallagher, 306 U.S. 62; Southern Pacific Co. v. Gallagher, 306 U.S. 167, or the tax on storage or withdrawal for use by the consignee of gasoline, similarly sustained in Gregg Dyeing Co. v. Query, 286 U.S. 472; Nashville, C. & St. L. Ry. Co. v. Wallace, 288 U.S. 249; Edelman v. Boeing Air Transport, 289 U.S. 249, or the familiar property tax on goods by the state of destination at the conclusion of their interstate journey. Brown v. Houston, supra; American Steel & Wire Co. v. Speed, 192 U.S. 500."
[1] Philadelphia & Southern S.S. Co. v. Pennsylvania, 122 U.S. 326; Ratterman v. Western Union Tel. Co., 127 U.S. 411; Western Union Tel. Co. v. Alabama, 132 U.S. 472; Galveston, Harrisburg & S.A. Ry. Co. v. Texas, 210 U.S. 217; Meyer v. Wells, Fargo & Co., 223 U.S. 298.
[2] In Railroad Co. v. Maryland, 21 Wall. 456, the payment of a percentage of gross receipts was upheld as a condition of the corporate franchise.
[3] The Court suggests that the fact that similar stevedoring activity will be required at the destination creates a risk of multiple taxation, since the State of destination would be as free to tax the unloading as New York to tax the loading. This is only multiple in the sense that each State taxes what occurs within its borders; the two taxes would not be on the same activity. It is no more relevant that stevedoring is involved in both cases, than is the fact that two States may impose property taxes on terminals or trackage within their respective borders.
[4] Moreover, the tax in the Philadelphia & Southern S.S. Co. case was restricted not only to transportation companies but also to receipts from transportation. Those facts were emphasized by Mr. Justice Bradley (122 U.S. pp. 344-345): "Can the tax in this case be regarded as an income tax? and, if it can, does that make any difference as to its constitutionality? We do not think that it can properly be regarded as an income tax. It is not a general tax on the incomes of all the inhabitants of the state; but a special tax on transportation companies. Conceding, however, that an income tax may be imposed on certain classes of the community, distinguished by the character of their occupations; this is not an income tax on the class to which it refers, but a tax on their receipts for transportation only. Many of the companies included in it may, and undoubtedly do, have incomes from other sources, such as rents of houses, wharves, stores, and water-power, and interest on moneyed investments. As a tax on transportation, we have already seen from the quotations from the State Freight Tax Case that it cannot be supported where that transportation is an ingredient of interstate or foreign commerce, even though the law imposing the tax be expressed in such general terms as to include receipts from transportation which are properly taxable. It is unnecessary, therefore, to discuss the question which would arise if the tax were properly a tax on income. It is clearly not such, but a tax on transportation only." Cf. United States Glue Co. v. Oak Creek, 247 U.S. 321, which sustained as against an interstate enterprise a net income tax of general application.