## PLATER *v.* KANE WAREHOUSE COMPANY, INC., ET AL.

[No. 134, September Term, 1965.]

*Decided March 2, 1966.*

The cause was argued before Prescott, C. J., and Hammond, Marbury, Oppenheimer and McWilliams, JJ.

*Leonard J. Ralston, Jr.,* with whom was *Martin E. Gerel* on the brief, for appellant.

*Gilbert A. Hoffman* and *George L. Huber, Jr.,* with whom was *Eugene A. Edgett, Jr.* on the brief, for appellees.

McWilliams, J., delivered the opinion of the Court.

Can a claimant to whom an award has been made withdraw his claim? The Commission (Workmen's Compensation Commission) says yes. Judge Pugh says no. We say, as far as this appeal is concerned, that the Commission was right.

The appellant, Sylvester Plater (Plater), on 4 January 1963, had been employed as a helper on a delivery truck by Kane Warehouse Company, Inc. (Kane) for about five years. He was 35 years old, a resident of the District of Columbia (DC), married and the father of six children. Kane (one of the appellees) is a Maryland corporation but its principal business is in DC. Plater's regular job (he was hired in DC) required him to be on a truck which made deliveries in DC and in Virginia. On 4 January, however, he was assigned to a truck scheduled to make some deliveries in Maryland because the helper regularly assigned to that truck did not come to work. While unloading a heating unit in Maryland, near Bethesda, Plater slipped on a patch of ice and was injured.

The other appellee, Liberty Mutual Insurance Company (Liberty) insures Kane against the claims of employees arising by virtue of the Workmen's Compensation Acts of *both* Maryland

and DC.[1] Employees' benefits under the DC Act are much more substantial than those afforded by the Maryland Act.

On 7 January Kane completed and forwarded to Liberty a printed form entitled "Employers First Report of Injury." A stamp indicates this was received at Liberty's DC office on 8 January. We think it fair to conclude that the form was provided by Liberty since printed directions thereon call for the mailing of one copy to "State Industrial Accident Commission,"[2] Baltimore, Md., and one copy to the DC office of Liberty. The full name of Liberty is also printed in another place on the form. There is no indication that Kane mailed a copy to the Commission.

Plater was not hospitalized but he visited one doctor almost daily until late in January. He had inquired at the Kane office about his money and he was told to pick it up at Liberty's DC office where he went after a visit to an eye specialist. He was told by Mr. Ross, an employee of Liberty, that he would have to sign a paper before the check could be given to him. He signed the paper but he said he could not read it because of the drops in his eyes.

The paper signed by Plater was a printed form entitled "Employee's Claim for Compensation." At the top of the page was printed, "State Industrial Accident Commission,[2] 741 Equitable Building, Baltimore 2, Md." Answers to most of the questions had been typed in when the form was handed to Plater to be signed. The form is undated and the affidavit is incomplete and unexecuted.

We assume the "Employee's Claim" together with the "Employers First Report," which had been in Liberty's possession since 8 January, was mailed to the Commission on 21 January because they both bear the Commission's time stamp reading "22 January, 9:47 A. M." On 24 January the Commission mailed to Plater, Kane and Liberty the "Notice to Employer and Insurance Carrier of Employee's Claim" which stated,

---

**1.** Since the interests of Kane and Liberty are, as far as this case is concerned, virtually indistinguishable, they will be designated, when acting jointly, simply as "Liberty."

**2.** Changed to "Workmen's Compensation Commission" by Chap. 584 of Acts of 1957.

among other things, that the Commission would act upon the evidence then in its hands unless, by 1 February, a hearing was requested. Liberty filed the medical reports (no hearing was requested) and on 19 February the Commission ordered compensation to be paid at the rate of $48 per week during Plater's temporary total disability, and providing that the award was subject to further determination in respect of permanent disability.

Plater testified he filed a claim with the DC Compensation Commission before he signed the paper for Mr. Ross. Other than his statement there is no evidence of this in the record. In his brief 19 February is stated to be the filing date. The record does indicate that on 13 February Liberty filed with the DC Commission for Kane an "Employer's First Report." Two medical reports also appear to have been filed by Liberty with the DC Commission. On 28 February the DC Commission advised the (Maryland) Commission that it proposed to close its file for lack of jurisdiction unless further information relative to the question of jurisdiction was forthcoming.

Precisely what transpired during late February and March is unclear but it seems safe to assume that Plater, having received only two compensation checks, began to realize that things were not as they should be and that it was time to hire a lawyer. This he did and on 3 April his attorney moved to vacate the Commission's award of 19 February.

Liberty made known its opposition and on 6 May a hearing was held at Rockville before Commissioner Frankel. During the succeeding months counsel submitted formal memoranda and a number of informal memoranda in support of their respective contentions. Finally, on 20 May 1964, the Commission rescinded its order of 19 February 1963 and permitted Plater to withdraw his claim, without prejudice. Liberty appealed and in its petition, filed in the Montgomery County Court, declared that the Commission had no power or authority to rescind its order or to allow Plater to withdraw his claim. Liberty filed a motion for summary judgment, as did Plater. After a hearing Judge Pugh granted Liberty's motion and remanded the case to the Commission for further proceedings.

Judge Pugh, in his opinion, observed that the Commission

gave no reasons for its decision. He then *assumed* the Commission acted on the theory that the claimant was excluded from the benefits of the Maryland statute by the provisions of Code, Art. 101, § 21(42) (1957). Judge Pugh went on to say:

"* * * This court does not believe that the Workmen's Compensation Commission is without jurisdiction in this case merely because sub-section 42 of Section 21 is limited to truck drivers and helpers who are residents of Maryland, unless this issue is raised by the employer or insurer prior to the award. Under the provisions of Section 42, it is provided that 'the filing of a claim under the laws of this State shall constitute an election to recover compensation under the laws of such State and no other.' Therefore, once having assumed jurisdiction, the Commission is required to keep jurisdiction."

It will not be necessary for us to appraise the soundness of the court's construction of subsection 42 because we think it more likely the Commission acted on a somewhat different theory. Accordingly *we shall assume* the Commission concluded it had the power and authority to allow Plater to withdraw his claim and to vacate or rescind the order awarding him compensation. It would not matter, therefore, whether the Commission ever acquired jurisdiction. The question for resolution, then, is the validity *vel non* of the theory we assume the Commission embraced.

In addition to the power to "* * * adopt reasonable and proper rules to govern its procedure * * *", Code, Art. 101, § 10 (1957), the Legislature has declared that "* * * the powers and jurisdiction of the Commission over each case shall be *continuing,* and it may, from time to time, make such modifications or changes with respect to former findings or orders with respect thereto *as in its opinion may be justified; * * *"* (Emphasis supplied.) Code, Art. 101, § 40 (c) (1957). Whether the power to make "modifications or changes" is broad enough to include "rescission or vacation" is a question we need not decide in the case at bar. Presumably the Commission has the power to adopt a rule of procedure governing this type of sit-

uation although there is nothing in the record to suggest that such a rule was ever adopted. To look, for a moment, at the other side of the coin, we know of no Maryland statute or decision or rule of this Court, which negates the power and authority of the Commission to allow, in appropriate circumstances, the withdrawal of claims and the vacation of awards. We think, under the conditions here present, the Commission had the power, upon Plater's request, to vacate its order of 19 February 1963 and that its power to act as it did is not attenuated or restricted by the language of Section 40 (c), *supra*.

In *Jones v. Securities & Exchange Commission*, 298 U. S. 1, 18-19 (1936), the Supreme Court considered a similar situation. Jones, sensing unfavorable action on his registration statement, attempted to withdraw the statement and "all application for consideration thereof or action thereon." The commission refused and thereafter successfully opposed all Jones' efforts to obtain relief from the courts. In the course of reversing the lower courts, Mr. Justice Sutherland said:

> "In this situation, does a registrant have the unqualified right to withdraw his registration statement or, in other words, to dismiss a pending proceeding by which, for his own advantage, he is seeking the use of the mails and the instrumentalities of interstate commerce? If he have such right, there is no basis for the exercise of discretion in respect of the matter on the part of the commission; for it is obvious that discretion does not exist where there is no power to act except in one way. Cf. *Detroit v. Detroit City Ry. Co.*, 55 Fed. 569, 573; *Ex parte Skinner & Eddy Corp.*, 265 U. S. 86, 93. The act contains no provision upon the subject; and it may not be construed as attempting to confer upon the commission an arbitrary power, under rule or otherwise, to deny, without reason, a motion to dismiss. We are unable to find any precedent for the assumption of such power on the part of an administrative body; and we go to the practice and rules of the courts in order to determine by analogy the scope and limit of the power;

> for, at least in the absence of a statute to the contrary, the power of a commission to refuse to dismiss a proceeding on motion of the one who instituted it cannot be greater than the power which may be exercised by the judicial tribunals of the land under similar circumstances. * * *."

If we follow the example of Mr. Justice Sutherland and "go to the practice and rules of the courts in order to determine by analogy the scope and limit of the power" of the Commission to act as it did, we find Maryland Rule 541 b, to be readily adaptable to the case at bar. Federal Rule 41(a)(2) is virtually identical. Both rules provide for the allowance of a voluntary dismissal "upon such terms and conditions as the court deems proper."

Early in 1960 a saboteur destroyed himself and all others aboard an aircraft of National Airlines on a night flight from New York to Florida. The dead and the debris fell from the sky near Wilmington, North Carolina. National attempted the removal of the ensuing 27 civil actions [3] from the U. S. District Court in Eastern Pennsylvania to the Eastern District of North Carolina. Before the court could act the plaintiffs in all of the suits moved for a voluntary dismissal and promptly filed new suits in New York. It was quite clear, as the court pointed out, that the plaintiffs didn't want North Carolina and the defendant wanted New York even less.

The court, after noting the applicability of Federal Rule 41(a)(2), had this to say:

> "It was formerly well settled in federal tribunals that a plaintiff, subject to payment of costs, possessed the unqualified right to dismiss his complaint unless some plain legal prejudice would result to the defendant other than the mere prospect of second litiga-

---

**3.** "Since the respective motions are identical in each one of the cases, and were argued as one by each side, they will hereafter be considered as one motion for defendant (to transfer), and one for plaintiffs (to dismiss without prejudice) — and the decision as to each will govern all." *Meltzer v. National Air Lines Inc.,* 31 F. R. D. 47, 48 (1962).

tion upon the subject matter. [Citing *Jones, supra*] * * *."

* * *

"For the last 24 years, however, under Rule 41 (a) (2), the granting of the voluntary dismissal has been subject to the court's discretion—no longer a matter of right." [Citing cases.]

* * *

"It goes without saying that when a defendant resists a plaintiff's motion to dismiss, he anticipates some kind of prejudice. It does not appear to this Court, however, that National Airlines, Inc., will suffer legally cognizable prejudice to a degree sufficient to bar plaintiffs' dismissal." *Meltzer v. National Airlines, Inc.,* 31 F. R. D. 47, 49 (1962).

Other than Liberty no one is prejudiced by the Commission's action. Liberty may be required, at some future date, to pay Plater compensation at the higher DC rates but this possibility evokes very little compassion since its contract with Kane requires it to do so. And in that event, it will, of course, be able to set off against any award the DC Commission might make whatever it has already paid Plater. Liberty may also have been put to some expense which it did not anticipate and which it otherwise would not have incurred. In any event either amount could hardly be large enough to have significance here.

Liberty argues that Plater is estopped from asking the Commission to vacate its order and allow him to withdraw his claim because he initiated the claim; because he did not raise any issues by the consideration date; because the Commission made an award; because he did not request a motion for a rehearing within seven days of the order of 19 February 1963; because he did not file an appeal within 30 days; because he indicated his intention of filing a claim in DC; because he did so; because he accepted compensation checks; because Liberty is estopped by Code, Art. 101, § 65 (1957) from asserting certain defenses. While we confess to being a trifle bewildered by such an array of reasons we must reject the argument. There is no showing that Liberty relied upon any conduct of Plater or that it has

been misled to its injury. Nor is it suggested that Plater has been guilty of an unconscientious, inequitable or fraudulent act of commission or omission. *Johnson Lumber Co. v. Magruder,* 218 Md. 440, 448, 147 A. 2d 208 (1958) ; *Fitch v. Double "U" Sales Corp.,* 212 Md. 324, 338, 129 A. 2d 93 (1957).

Liberty also argues, and Judge Pugh seems to have agreed, that Plater's election to file his claim in Maryland is irrevocable, not only as to him but as to the Commission as well. It could be argued that Plater did not make *any* election, that the election was actually made by Liberty, and there is evidence in the record which could be advanced in support of such an argument. Plater is a 35 year old Negro, of limited literacy and education. The claim was prepared on a form chosen by Liberty, intended for filing with the Maryland Commission. It was handed to him to sign at a time when his pupils were so dilated he could not read and the delivery of his check was conditioned on his signing the form. He was a resident of DC, his employer was a resident of DC, most of his work was done in DC, Liberty's office was in DC. To say that he knew, or could have known, or should be charged with knowing that by signing the form he was invoking the jurisdiction of Maryland's Commission borders on the absurd. As has been observed there had been in Liberty's possession since 8 January the executed "Employer's First Report" which, together with the claim, arrived at the Commission's office on 22 January. But it is not necessary for us to decide whether Plater did or did not make an election because in our judgment the Commission's decision to allow him to withdraw was proper.

Our attention has been directed to the decisions of the Supreme Court in *Magnolia*[4] and *McCartin*[5] and we are familiar with the later cases of *Gasch v. Britton,* 202 F. 2d 356 (D. C. Cir. 1953) ; *Bowers v. American Bridge Co.,* 43 N. J. Super. 48, 127 A. 2d 580 (1956) ; *Hudson v. Kingston Contracting Co.,* 58 N. J. Super. 455, 156 A. 2d 491 (1959). All of these cases deal with attacks on claims asserted in the second jurisdiction, after an award in the first jurisdiction. We are concerned *only* with the Commission's power to allow Plater to

---

4. *Magnolia Petroleum Co. v. Hunt,* 320 U. S. 430 (1943).
5. *Industrial Comm'n v. McCartin,* 330 U. S. 622 (1947).

withdraw his claim. What he does in connection with his claim in DC (or elsewhere), what defenses may be interposed against his claim, what the basis of any decision of other commissions or courts may be, are all matters to occupy the attention of him and his counsel. Indeed, the withdrawal of his claim could very well turn out to be a mistake on his part. That this may happen, however, is no reason why Maryland should try to keep him if he doesn't want to stay.

The order of the trial court will be reversed. The costs will be paid by the appellees.

*Order reversed. Costs to be paid by appellees.*